**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 22-CR-076-JFH** |
| **DERRICK DWAYNE LOUIE-JACKSON,** | |
| **Defendant.** | |

## <u>OPINION AND ORDER</u>

Before the Court is an opposed omnibus motion in limine ("Motion") filed by Defendant Derrick Dwayne Louie-Jackson ("Defendant").  Dkt. No. 35.  The United States of America ("Government") opposes the Motion.  Dkt. No. 38.  For the reasons stated, the Motion is DENIED**.**

## BACKGROUND

This case arises from a car chase near Seminole, Oklahoma on April 11, 2022.  Dkt. No. 1.  The original charging complaint alleges that Defendant initially committed a traffic violation while driving a 2007 GMC Yukon.  *Id.* at 3.  Seminole Police Department Patrolman Chris Perteet ("Officer Perteet") recognized Defendant as the driver and attempted to initiate a traffic stop.  *Id.* Defendant briefly stopped and then rapidly accelerated, at one point reaching speeds of over 100 miles per hour.  *Id.* at 4.  Officer Perteet pursued the Yukon and observed several items come out of the Yukon's windows as it traveled.  *Id.*  The complaint alleges Defendant then "pressed his brakes three times and [] a large dog was ejected from the passenger side window."[1]  *Id.*  The Yukon and Officer Perteet's vehicle collided twice during the chase.  *Id.*

---

[1] Despite this incident, the dog fortunately survived.  *Id.*

The vehicle pursuit ended when the Yukon crashed into a tree while the driver attempted to avoid a police blockade. *Id.* The driver fled on foot. *Id.* When law enforcement searched the Yukon, they found various drugs and drug paraphernalia as well as a revolver and ammunition. *Id.* at 5. They also found a gym membership card for "Derrick Dewayne [sic] Jackson" and a tribal membership card for "Derrick Dewayne [sic] Louie." *Id.* Law enforcement recovered a bag containing methamphetamine near the location where Officer Perteet observed items come from the window of the Yukon. *Id.* Additionally, law enforcement retrieved the dog that had exited the Yukon and took it for medical attention. Dkt. No. 38 at 2.

Approximately two (2) weeks later, on April 28, 2022, law enforcement visited the residence of Amanda Allen ("Allen") and Kendra Mellott ("Mellott") at 1320 North Highland in Seminole, Oklahoma. *Id.* at 3. Allen owned the dog that was involved in the Yukon chase, and ATF Task Force Officer Adam Good ("TFO Good") had learned that Defendant had previously taken care of the dog for Allen. *Id.* According to the Government, law enforcement went to Allen and Mellott's residence both to seek out Defendant and to follow up on the dog's injuries. *Id.* at 6. TFO Good spoke with Allen at the front door of the residence. *Id.* at 3. While this conversation occurred, other law enforcement team members saw Defendant exit the back of the residence; when Defendant saw the officers, he attempted to flee before surrendering and being taken into custody. *Id.* Law enforcement obtained permission to search Allen and Mellott's residence, where they found loose rounds of ammunition and what the Government describes as "a large quantity" of marijuana. *Id.* at 3-4. Mellott said the ammunition—some of which would have been compatible with the revolver found in the Yukon on April 11, 2022—belonged to Defendant. *Id.* at 4.

After Defendant was arrested, he was interviewed by TFO Good.  Dkt. No. 35-1.  ATF Agent Madison Rebel was also present in the interview room.  The interview was video recorded and is approximately forty-five (45) minutes long.  *Id.*  After Mirandizing Defendant, TFO Good asks Defendant various questions about the April 11, 2022 car chase and the contraband discovered on April 28, 2022 at Allen and Mellott's residence.  Defendant confirms he is an Indian during the interview.  *Id.*  TFO Good also refers to several previous interactions with Defendant, including a rape investigation that did not result in charges against Defendant and a murder charge that resulted in Defendant's conviction, as well as outstanding charges against Defendant relating to a car chase in Pottawatomie County with the Shawnee Police Department.  *Id.*

Defendant made an initial appearance on the criminal complaint and was later indicted. Dkt. No. 6; Dkt. No. 15.  The indictment charges Defendant with six (6) counts:  possession with intent to distribute methamphetamine; possession with intent to distribute heroin; possession of a firearm in furtherance of a drug trafficking crime; felon in possession of a firearm; assault with a dangerous weapon with intent to do bodily harm in Indian country; and felon in possession of ammunition.  Dkt. No. 15.  The first five (5) counts involve allegations stemming from the April 11, 2022 chase.  The last count is based on the ammunition found when Defendant was arrested on April 28, 2022.

## AUTHORITY AND ANALYSIS

### I.   Timeliness and Scope of Review

The Court's scheduling order set the motions deadline for June 14, 2022.  Dkt. No. 26. Defense counsel moved for and received an extension to June 17, 2022.  Dkt. No. 31; Dkt. No. 33. Counsel filed the Motion on July 13, 2022, raising limine issues as well as suppression and severance issues.  Dkt. No. 35; *see id.* at 4 (suggesting Mirandized statement was involuntary), 8 (requesting severance of count six).  Under the Federal Rules of Criminal Procedure, motions to

suppress and motions to sever filed after the Court's deadline are untimely and may not be considered unless the movant shows good cause. Fed. R. Crim. P. 12(b)(3)(C), (b)(3)(D), & (c)(3). "Good cause" is a "flexible standard that requires consideration of all interests in the particular case." *United States v. Bowline*, 917 F.3d 1227, 1235 (10th Cir. 2019) (quoting Advisory Comm. Notes to Fed. R. Crim. P. 12 (2014)).   Defense counsel know how to file a request for a continuance, as they requested an extension from June 14, 2022 to June 17, 2022, which the Court granted.   Dkt. No. 31; Dkt. No. 33.   Defendant did not submit any motions for almost another month, instead filing the Motion the day before pretrial conference. Dkt. No. 35. When questioned about the delay at pretrial conference, lead defense counsel attributed his untimely filing only to a busy caseload and other trials in the Northern and Eastern Districts of Oklahoma.   Defense counsel's situation is far from unique in this district's post-*McGirt* reality.[2]

Pursuant to Rule 12(c)(3), the Court finds the Motion is untimely and Defendant has not demonstrated good cause.   The Court consequently declines to consider the suppression and severance issues raised in the Motion.   However, because a limine ruling is meant to improve trial efficiency, the Court turns to consideration of the evidentiary issues raised in the Motion.

---

[2]  The Court has experienced unprecedented caseloads and jurisdictional complexities in the past two (2) years.   *See Oklahoma v. Castro-Huerta*, 142 S.Ct. 2486, 2492 (2022) (describing the "significant challenge for the Federal Government and for the people of Oklahoma" in the wake of *McGirt v. Oklahoma,* 140 S.Ct. 2452 (2020)); *United States v. Budder*, --- F. Supp. 3d ---, 2022 WL 1948762, at *7 (E.D. Okla. Apr. 29, 2022) (collecting cases where federal courts "noted *McGirt's* tremendous impact").   In particular, *McGirt* led to a one-year increase of more than 400% in the number of criminal cases filed in the Eastern District of Oklahoma.   *See* U.S. Courts, *Judiciary Supplements Judgeship Request, Prioritizes Courthouse Projects* (Sept. 28, 2021), https://www.uscourts.gov/news/2021/09/28/judiciary-supplements-judgeship-request-prioritizes-courthouse-projects.   The Eastern District of Oklahoma has one and a half (1 ½) district judges, of which the undersigned is the half-time judge due to his multi-district caseload.   The Court's criminal scheduling orders are designed to facilitate orderly litigation amidst these circumstances and specifically note that "[d]ue to the Court's multi-district caseload, this schedule is relatively inflexible." *See* Dkt. No. 26 at 1.   Counsel's failure to abide by these expectations impedes judicial efficiency and monopolizes limited resources.

## II.   Standard

"The purpose of a motion in limine is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to the issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Mendelsohn v. Sprint/United Mgmt. Co.*, 587 F.Supp.2d 1201, 1208 (D. Kan. 2008) *aff'd,* 402 F. App'x 337 (10th Cir. 2010) (quotation and citation omitted).  In many instances, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in the proper context.  *Id.*  "A court will generally not grant a motion *in limine* unless the moving party meets its burden of showing that the evidence in question is clearly inadmissible on *all* potential grounds." *Tulsa Zoo Mgmt., Inc. v. Peckham Guyton Albers & Viets, Inc.*, No. 17-CV-644, 2019 WL 1562147, at *1 (N.D. Okla. Mar. 5, 2019) (citation and quotation omitted).

Evidence is relevant if it has any tendency to make a fact more or less probable and the fact is of consequence in determining the action.  Fed. R. Evid. 401.  Although relevant evidence is generally admissible, it may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.  Fed. R. Evid. 402, 403.  "Evidence is not unfairly prejudicial simply because it is damaging to [a party's] case." *United States v. Caraway*, 534 F.3d 1290, 1301 (10th Cir. 2008) (quotation omitted).  Rather, it must have "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  *Id.* (quoting Fed. R. Evid. 403 advisory committee's note).

## III.   ATF Interview

During Defendant's post-arrest interview on April 28, 2022, TFO Good refers to several previous interactions with Defendant, including a rape investigation that did not result in charges against Defendant and a murder charge that resulted in Defendant's conviction.  TFO Good also

5

mentions outstanding charges relating to a car chase in Pottawatomie County with the Shawnee Police Department.  Because of these references to past criminal behavior, Defendant requests exclusion of the entire interview video.  Dkt. No. 35 at 6.

Federal Rule of Evidence 404 prohibits introduction of a person's past crimes, wrongs, or bad acts to show that a person acted similarly in the litigated events.  Fed. R. Evid. 404(b).  Defendant acknowledges that generally, references to prior bad acts may be redacted from evidence "while saving the relevant parts of an interview."  Dkt. No. 35 at 6.  He claims this task is impossible in this case, however, because Defendant had other outstanding charges relating to another police pursuit and TFO Good's questioning "ma[de] it hard to tell specifically which police pursuit he was talking about."  *Id.*  Defendant requests the Court exclude the full recording because, he argues, references to Defendant's criminal history are "part and parcel of the entire interview."  Dkt. No. 35 at 6.

The Government responds claiming TFO Good clarifies at least twice in the interview that his questions involve the April 11, 2022 car chase with Seminole Police Department, not the earlier chase with the Shawnee Police Department.  Dkt. No. 38 at 5.  It says the video has several relevant parts, including Defendant's admission of possessing ammunition on April 28, 2022; discussion of the dog that exited the Yukon window during the April 11, 2022 car chase (*see infra* at IV); and Defendant's acknowledgment that he is Indian.  *Id.*  The Government plans to "redact the video to remove references to prior arrests that did not result in convictions or prison sentences."  Dkt. No. 38 at 5.  It further states that, depending on any stipulations the parties reach (*see infra* at V), it would "also redact the statements regarding arrests resulting in convictions."  *Id.* at 5-6.  With these redactions, the Government claims there is still a large portion of the interview that can be

played for the jury." *Id.* at 6. The Government has not submitted a redacted version of the interview for the Court's consideration.

The Court is not persuaded by Defendant's argument that references to his criminal history are too "part and parcel" of the interview for the Government to attempt redaction sufficient to comply with Rule 404(b). However, the Court cannot at this time determine whether the Government's proposed redactions themselves are sufficient to comply with Rule 404(b). The Court will therefore deny Defendant's Motion without prejudice at this time. Defendant may re-urge his argument after the Government submits a proposed redacted version of the interview.[3]

## IV.   Dog Incident

Defendant next requests exclusion of any testimony about the dog that exited the window of the Yukon during the April 11, 2022 pursuit. Dkt. No. 35 at 7. He states that he is not accused of committing any offenses against an animal and that "there is no indication [he] was responsible for the dog's departure from the vehicle." *Id.* He argues exclusion is necessary under Rule 403 because of the risk of unfair prejudice, as he claims "the opinion that people who hurt dogs are [] 'sorry' as people . . . is not uncommon and will likely be [felt] by those on the jury" and lead to a conviction based on emotion rather than proof. *Id.* The Government responds that "evidence of the dog provides proper context for the actions of law enforcement that led to [Defendant's] arrest" because TFO Good and other agents visited Allen and Mellott's residence to look for Defendant and follow up on the dog's injuries. Dkt. No. 38 at 6. It further claims evidence of the dog's exit "would go to show that [Defendant] had at least one window open wide enough for him to throw items from the [Yukon]." *Id.*

---

[3] The redactions should also reflect the Court's ruling regarding the dog involved in the Yukon pursuit. *See infra* at IV.

The Court will not exclude all references to the dog, as the Government is correct that evidence about it is relevant to Defendant's identity as the driver of the Yukon, the circumstance of the Yukon having an open window during the pursuit, and Defendant's eventual apprehension at the residence of the dog's owner.  However, while the dog's connection to the events of both April 11, 2022 and April 28, 2022 is material, the mechanism by which the dog made its exit from the Yukon is not.  Defendant is correct that he is not charged with any animal cruelty crimes and that the idea of animal cruelty is highly emotional to many potential jurors.  Thus, the Government may introduce evidence that the dog came out of the Yukon through a window during the chase but shall not elicit testimony or present argument that Defendant purposefully ejected the dog from the vehicle.

## V.     Defendant's Prior Convictions

Defendant's last limine request is exclusion of his prior convictions for second degree murder and possession of a firearm after a felony conviction.  Dkt. No. 35 at 8.  He claims he will stipulate that he has been previously convicted of a crime punishable by a term of imprisonment exceeding one year.  *Id.*  The Government responds that Defendant's proposed stipulation is insufficient under the 2019 Supreme Court case *Rehaif v. United States*, 139 S.Ct. 2191 (2019), which requires the Government prove a defendant knew he had the relevant status as a felon. Under current law, "a defendant must [] stipulate that he knew of the felony conviction when he allegedly possessed a firearm or ammunition, or the prosecution will be permitted to offer evidence of defendant's prior conviction to establish this essential element of a § 922(g)(1) charge." *United States v. McKinney*, No. 20-CR-019-CVE, 2021 WL 2206826, at *1 (N.D. Okla. June 1, 2021) (citing *United States v. Grant*, 2020 WL 7398780 at *2 (D. Colo. Dec. 17, 2020)).  According to the Government's trial brief, it has submitted proposed stipulations to Defendant but the parties

have not reached any agreements.  Dkt. No. 40 at 1.[4]  If the parties negotiate a stipulation which includes Defendant's knowledge of his status as a felon, this section of the Motion will be moot. Since the content of any stipulations is currently unresolved, however, the Court will deny this section of Defendant's Motion without prejudice.

**CONCLUSION**

**IT IS THEREFORE ORDERED** that Defendant's motion in limine [Dkt. No. 35] is DENIED.

**IT IS FURTHER ORDERED** that the Government shall provide the Court and opposing counsel with a proposed redacted version of Defendant's ATF interview no later than Wednesday, July 27, 2022 at 4:00 p.m.  Defense counsel may file a revised motion in limine as to the redacted video _only_ no later than Thursday, July 28, 2022 at 4:00 p.m.

DATED this 26th day of July 2022.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE

---

[4]  The Court notes that stipulations, if any, were due on July 22, 2022.  Dkt. No. 26 at 1.